Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4779 | **DATE** | 8/11/2000 |
| **CASE TITLE** | THE MAXWELL STREET HISTORIC vs. THE BOARD OF TRUSTEES OF THE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons provided in this Memorandum Opinion and Order, plaintiff's motion for temporary restraining order [2-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | AUG 11 2000 | |
| | Notified counsel by telephone. | | | date docketed | 9 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | ED-7 FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | | 00 AUG 11 PM 2:43 | 8/11/2000 date mailed notice | |
| | CG | courtroom deputy's initials | Date/time received in central Clerk's Office | CG mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE MAXWELL STREET HISTORIC PRESERVATION COALITION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 00 C 4779 <br> Judge Ronald A. Guzman |
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, (sued as THE BOARD OF TRUSTEES FOR THE UNIVERSITY OF ILLINOIS and THE UNIVERSITY OF ILLINOIS AT CHICAGO), | ) ) ) ) ) ) ) | **DOCKETED** |
| Defendants. | ) ) | AUG 1 1 2000 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Maxwell Street Historic Preservation Coalition, has filed the instant action seeking to enjoin the University of Illinois from continuing demolition of certain structures as part of the University of Illinois at Chicago's South Campus Development Project ("South Campus Project"), construction of which is presently underway and ongoing. For the reasons provided in this Memorandum Opinion and Order, plaintiff's Motion for Temporary Restraining Order is denied.

## BACKGROUND

The South Campus Project was first introduced and made public more than six years ago

1



when the University began to expend millions of dollars to acquire properties. Since that time, dilapidated buildings have been demolished; athletic fields have been constructed to serve the student body and the community at large, ad construction of the first of two planned student residence halls has begun.

In 1994, after the South Campus Project had been introduced, one of plaintiff's members requested that a portion of the South Campus Project area be listed in the National Register of Historic Places. The Illinois Historic Preservation Agency ("IHPA"), however, rejected the nomination due in large part to "the lack of integrity possessed by this area." The IHPA's reasoning for rejecting the nomination was shared by the City of Chicago's Commission on Chicago Landmarks as well as its Department of Planning and Development. Nonetheless, recognizing the historic significance of the Maxwell Street Police Station ("Police Station") which is located within the subject area, University and the IHPA agreed that the University would nominate and preserve the Police Station as an historic site. In the Memorandum of Agreement ("MOA"), the University expressly agreed to prepare, complete, and pay for the nomination of the Police Station as a historic place. The University further expressly agreed to rehabilitate the Police Station, consult with the IHPA regarding its construction plans, document the location of existing building within the South Campus Project, and ultimately develop a historical chronological public exhibit of the subject area.

A short time later, Lori Grove, a member of plaintiff, appealed the IHPA's decision rejecting the nomination to the Keeper of the National Register of Historic Places ("Keeper"). Yet "[d]ue to a irretrievable loss of historic integrity," the Keeper denied plaintiff's appeal. Notably, Ms. Grove was further expressly advised that the Keeper's decision was "the final

administrative decision regarding appeals to the National Registration of Historic Places." Neither Ms. Grove nor the plaintiff sought further administrative or judicial appeals. Thereafter, relying upon the IHPA's decision, the Keeper's decision, the MOA, and further noting the non-existence of legal proceedings to halt the South Campus Project, University began the massive construction required for the South Campus Project.

In May of 1998, the University submitted the South Campus project to the City of Chicago for its approval as a planned development. The proposed planned development ordinance was presented to the public at hearings. In these hearings, representatives of the plaintiff appeared and gave testimony. After the public hearings, the City approved the South Campus Project as a planned development. In 1999, the University further applied for and received City tax increment financing to develop and finance the South Campus project. During the later part of 1999 and early 2000, the University sold revenue bonds to finance the South Campus Project, and began to acquire additional properties in anticipation of construction. Then, in mid-2000, after numerous buildings within the South Campus Project had been demolished and after millions of dollar had been expended on the project, plaintiff submitted an amended nomination for the designation of a smaller area within the South Campus Project as an Historic Place. Not persuaded by the amended nomination, in July of 2000, the IHPA once again rejected the nomination. The basis of the IHPA's decision in 2000 was the same as its basis six years before . . . "the lack of integrity possessed by the proposed area." Plaintiff now alleges that the IHPA's recent decision has been appealed to the Keeper. While the decision is being reviewed by the Keeper, plaintiff wishes to enjoin the University from continuing and completing the construction of the South Campus Project.

## DISCUSSION

16 U.S.C. § 470f (National Historic Preservation Act) requires the head of any federal agency having direct or indirect jurisdiction over a proposed federal or federally assisted undertaking shall, prior to the approval of the expenditure of any federal funds on the undertaking or prior to the issuance of a license, as the case may be, take into account the effect of the undertaking on any district, site, and building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such federal agency is required to afford the Advisory Council on Historic Preservation a reasonable opportunity to comment with regard to such undertaking. The purpose of the act was to require federal agencies and departments to consider the effects of any project or undertaking on any site included in, or eligible for inclusion in, the National Register prior to the approval of any federal funds.

Plaintiff, The Maxwell Street Historic Preservation Coalition -- an Illinois not-for-profit corp., whose mission is the preservation of Chicago's historic Maxwell Street district, brings before us a motion for a temporary restraining order. The petition alleges that the University of Illinois is in violation of 16 U.S.C. § 470f because it is in the process of demolishing buildings that have been nominated for listing on the National Register of Historic Places without first allowing the Keeper of the National Register to make a final determination as to eligibility for registration.

In its response the defendant maintains that 16 U.S.C. § 470f does not apply because the absence of federal funding, control or involvement in any significant way in the University's South Campus Development Project defeats the jurisdiction plaintiff asserts under the Act.

Section 470f applies only to federal agencies. The University of Illinois maintains that given the totality of the circumstances it is not, for purposes of this act a federal agency. The act defines "Agency" to mean: "agency as such term is defined in section 551 of Title 5, U.S.C." (16 U.S.C. § 470w ). This section, in turn, defines "Agency" to mean:

(1) "Agency" means each authority of the government of the United States, whether or not it is within or subject to review by another agency, but does not include....

The above definition would not appear to include the Board of Trustees of the University of Illinois (a body corporate and politic which functions as an agency of the State of Illinois, *People ex rel. Board of Trustees of University of Illinois vs. Barrett*, 46 N.E.2d 951, 382 Ill. 321 (1943). (Although the lawsuit is brought against both the Board of Trustees of the University Of Illinois and the University of Illinois at Chicago defendants represent, and plaintiff does not dispute, that there is only one appropriate legal entity, the University of Illinois, with the Chicago campus being a part or division thereof.)

In *Edwards v. First Bank of Dundee*, 534 F.2d 1242, 1245 (7th Cir. 1976) our Court of Appeals held that:

> In order for a project to be "federally assisted" within the meaning of NHPA or a "major Federal action" within the meaning of NEPA, it must be wholly or partially funded with federal money. It is this money which imparts a federal character to a project and gives rise to the necessity of meeting the statutory requirements of those two acts. Without such federal funds, the project remains local in nature.

Plaintiff argues that the University and the South Campus Development Project are, by

reason of having been funded with grants of monies provided by the United States through various of its agencies, properly considered "federal agencies" within the meaning of the National Historic Preservation Act. We disagree. On the record before us plaintiff has failed to establish a likelihood of success as to this crucial element of its underlying complaint. In its memorandum entitled *Plaintiff's Memorandum on Issues Raised at TRO Hearing* plaintiff attempts to establish this element by pointing to language in a quote from a history published by the University of Illinois Press (Rosen, *Decision-Making Chicago-Style: The Genesis of the University of Illinois Campus, (1980) at 116-17*). But this language, it is clear from the context and arguments of the parties, relates to federal funding obtained by the city for the implementation of an urban renewal project in 1962. Plaintiff also refers to a document entitled *Roosevelt-Halsted Area, Planning Proposals* issued by the city of Chicago Department of Urban Renewal in August of 1966. In that document the department's planning proposal estimates total land costs of $23 million with the federal share being $18 million. However, plaintiff produces no connection between any federal funds which may have been spent in the urban renewal plans of 1962 and 1966 by the City of Chicago and estimates of federal funds to be used in those plans and the University of Illinois' present South Campus Development Project. In fact, during oral argument it was made clear that since the land was sold by the City of Chicago to the University of Illinois, no federal funds of any sort have been associated with this current project in any way. In addition, defendant has filed Defendant's Exhibit K, *Affidavit of Thomas L. Gardner,* in which Mr. Gardner states:

> I am Assistant Vice President, Office of Business and Financial Services, University of Illinois at Chicago, and have been in that position since March 2000. I have been employed in the Business

> Office of the University of Illinois at Chicago for 22 years . . . . To
> the best of my knowledge, and based upon my review of records in
> my office, the University has not received nor does it anticipate
> receiving funds from the government of the United States or its
> agencies for the South Campus Development Project. The costs of
> the South Campus Development Project are expected to be paid by
> proceeds from bond sales, State appropriations, rental income,
> funds pledged by the City of Chicago and University funds.

At plaintiff's request we directed the University to produce to plaintiff all documents relating to the financing of the University's South Campus Development Project. Yet, even with this, plaintiff has come forth with no evidence whatsoever that the University is expending federal funds or being directed, supervised or in any way controlled or counseled by the federal government in this undertaking. The expenditure of federal funds some 34 years ago for the purchase by the city of land which it then sold to the University of Illinois does not constitute the expenditure of federal funds for the purpose of demolishing buildings on that land today. Furthermore, even assuming *arguendo* that federal funds have somehow been used in the execution of the South Campus Development Project, this alone is insufficient to change a state agency into a federal agency for purposes of the National Historic Preservation Act. There must, in addition, be some form of federal approval, supervision, control, or at least a certain level of consultation, over the spending of the federal funds in order to subject the University of Illinois to the requirements of the National Historic Preservation Act. Plaintiff provides no proof or facts upon which the court could conclude that any such federal government involvement exists. Without this the court lacks jurisdiction to impose the injunctive relief plaintiff requests.

We are cognizant of the fact that plaintiff seeks solely to maintain the *status quo*. However, even for that there must be a showing of a more than negligible likelihood of success

on the merits. Moreover, in this case maintaining the status quo would not be without cost. The University has borrowed over $136 million and spent over $50 million to date on the planning, designing, demolition and construction activities towards completion of its South Campus Development Project. Its daily debt service alone on the borrowed funds specifically allocated to the South Campus Development Project amounts to more than $20,000 per day. Nor, was this investment done blindly without consideration of the interests protected by the National Historic Preservation Act. In 1994 plaintiff sought to secure a listing on the National Register of Historic Places for a proposed "Maxwell Street Market Historic District." The end result of the process, in which the University took part, was a determination in December of 1994 by the Keeper of the National Register of Historic Places that the proposed Maxwell Street Market Historic District is not eligible for listing in the National Register. (Defendant's Exhibit G) Thus, the University has already, with respect to the historic district as then defined by plaintiffs, consulted as required of federal agencies by the National Historic Preservation Act. We need not decide the issue of whether or not the plaintiff's new nomination requires a new consultation as we have determined that there is insufficient evidence to establish a likelihood that the act applies to the University of Illinois' actions in this case.

However, we note that it is undisputed that plaintiff has had ample opportunity in the past to present its general case for a Maxwell Street Historic District to the Keeper of the National Register. Although plaintiff may not have known in the past with specific certainty that the very buildings it now seeks to protect were to be demolished, it certainly knew that the buildings were in the specific area to be massively redeveloped. Further, in the *Memorandum of Agreement Dated November 30, 1994 by and between the Board of Trustees of the University of*

8

*Illinois and the Illinois Historic Preservation Agency with Regard to the Expansion of the University of Illinois at Chicago Campus*, Defendant's Exhibit F, the Illinois Historic Preservation Agency concludes "that except for the Maxwell Street Police Station no other individual building within the Expansion Area is eligible for listing on the National Register and that no group of sites, buildings, structures or objects within the Expansion Area is eligible for listing on the National Register as an historic district . . . ." It is therefore clear that the Illinois Historic Preservation Agency has considered all of the buildings within the proposed site and rejected all except for the Maxwell Street Police Station. Thus, in making its recommendation in 1994 against listing the proposed Maxwell Street site the IHPA specifically considered and rejected all of the buildings. From Defendant's Exhibit D it is clear that the City's Commission on Chicago Landmarks also considered the entire remaining built-up block of Maxwell Street in coming to its conclusion and recommendation that the area does not qualify for protection as an historic landmark. It appears, therefore, that the University has already afforded the Advisory Council on Historic Preservation a reasonable opportunity to comment with regard to the very area and structures plaintiff now seeks to protect.

At any rate, in order to be successful on the merits at trial plaintiff would have to obtain a reversal of this prior ruling by the Keeper of the National Register of Historic Places. The likelihood of such an occurrence is, in our opinion, less than negligible. On July 13, 2000 the Illinois Historic Preservation Agency once again declined to nominate the plaintiff's proposed historic district for registration in the National Register of Historic Places. (Defendant's Exhibit I) In so doing it noted that the current application is similar to that of 1994 with one substantial difference, the addition of the blues music theme as one of the bases for significance of the area.

9

In rejecting the current application the agency found that the integrity of the proposed district has significantly deteriorated from what it was even in 1994. The dense urban historic setting of the area has been significantly lost through demolitions since then. In reviewing its opinion of 1994 in which it found that there was a lack of integrity in the proposed site, the commission's State Historic Preservation Officer, William L. Wheeler, concluded that "my previous opinion was correct and is further verified by the loss of additional buildings since that time." Mr. Wheeler went on to explain:

> Another question I thought should be considered was whether the blues music theme as opposed to the commercial activity theme would somehow alter the requirements of what would be needed for the proposed district to have sufficient integrity. My conclusion is that the new theme does not alter the manner in which integrity should be evaluated because I understand that both types of activities were undertaken in the same setting.
>
> It is clear from reading the application that there is considerable evidence, much of it in the form of oral history, that Maxwell Street was a place were musicians frequently played and that some of these musicians made important contributions to the development and popularizing of the blues. It is also clear that most of their activities took place on the street. Little information is provided to show an association with particular remaining buildings.
>
> The commercial activities of street vendors and of building occupants took place with the back-drop of the multi-story curtain walls lining the streets. Similarly the blues music took place on the streets, with the same buildings providing the historic visual background. I have not found any reason to conclude that the important elements of integrity would be any different for the blues music theme than for the commercial activity theme.

Thus it is clear from the evidence presented to us that the likelihood of plaintiff's proposed site being eligible for inclusion in the National Register as required by 16 U.S.C. § 470f is very slight. In addition, the University has engaged in what would appear to be ongoing discussions with plaintiff as well as other interested groups throughout the development and

execution of its expansion project.

Five factors figure into the determination of whether to grant temporary or preliminary injunctive relief.: as a threshold matter, plaintiffs must show (1) a likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is denied, and (3) the inadequacy of any remedy at law, and, once this threshold showing is made, the court balances (4) the harm to plaintiffs if the preliminary injunction were wrongfully denied against the harm to the defendant if the injunction were wrongfully granted, and (5) the impact on persons not directly concerned in the dispute, that is, the public interest. *See Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Because we find plaintiff has failed to establish a more than negligible likelihood of success on the merits we do not reach consideration of the remaining factors.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for a Temporary Restraining Order (2-1) is hereby denied.

SO ORDERED

ENTERED: 8/11/00

*[signature]*

**HON. RONALD A. GUZMAN**
**United States Judge**

11